IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LOCAL 705 INTERNATIONAL ) <br> BROTHERHOOD OF TEAMSTERS HEALTH ) <br> AND WELFARE FUND and JOSEPH BAKES, ) <br> STEPHEN F.G. BRIDGE, JUAN CAMPOS, ) <br> GREGORY R. FOSTER, WILLIAM KEENAN, ) <br> JOHN NAUGHTON, and STEPHEN E. ) <br> POCZTOWSKI, as trustees, ) <br>  ) <br> Plaintiffs, ) <br>  ) <br> v. ) <br>  ) <br> RAFEEQ H. BILAL ) <br>  ) <br> Defendant. ) | No. 08 C 5027 <br><br> HONORABLE DAVID H. COAR |

**MEMORANDUM OPINION AND ORDER**

The Plaintiffs, Local 705 International Brotherhood of Teamsters Health and Welfare Fund and its trustees, filed a complaint arising under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.*, against Defendant Rafeeq Bilal, alleging that he has failed to reimburse the Plaintiffs for medical payments made on his behalf, in violation of the parties' reimbursement and subrogation agreement. Before the court is Bilal's motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the motion is DENIED.

**I. Background**

The relevant allegations in the complaint, which this court must accept as true for present purposes, are as follows:

The Local 705 International Brotherhood of Teamsters Health and Welfare Fund is an "employee welfare benefit plan," within the meaning of ERISA, and the individual plaintiffs are

currently its fiduciaries. The employee welfare benefit plan was established under a collective bargaining agreement between the Local 705 International Brotherhood of Teamsters and certain employers and employer associations, and must be maintained and administered in accordance with the provisions of the Labor-Management Relations Act of 1947, as amended, and ERISA. (Compl. ¶2.)

Bilal was a "participant" within the meaning of ERISA, eligible for benefits pursuant to the provisions of the Local 705 International Brotherhood of Teamsters Health and Welfare Plan of the Local 705 International Brotherhood of Teamsters Health & Welfare Fund (the "Plan") at all relevant times. (Compl. ¶4.) Under the Plan, Plaintiffs provide medical benefits for eligible participants and their dependents to cover portions of the cost of medical bills, hospitalization expenses, medical treatments, and medical supplies. The basis upon which such benefits are to be provided is set forth in the provisions of the Plan. (Compl. ¶5.)

On November 21, 2003, Bilal sustained a head injury while employed by DHL. (Compl. ¶6.) On or about January 22, 2004, an Application for Adjustment of Claim (Application for Benefits) was filed on behalf of Bilal with the Illinois Industrial Commission, n/k/a Illinois Workers' Compensation Commission. (Compl. ¶7.) The Plaintiffs have submitted a copy of the Application for Adjustment of Claim along with their complaint. (Compl. Ex. B.)

On January 31, 2004, Bilal signed a "Reimbursement and Subrogation Agreement" acknowledging that payments for medical expenses had been and would be made on his behalf by the Plaintiffs under the provisions of the Plan as a result of the head injury sustained in the work-related accident described above. He further agreed to reimburse the Plaintiffs in accordance with the Plan to the extent of any net recovery of benefits paid by the Plaintiffs as a result of legal action or settlement. (Compl. ¶8.) The Plaintiffs submitted a copy of the

Reimbursement and Subrogation Agreement along with their complaint. (Compl. Ex. C.) They also submitted a copy of Section 2.17 of the Plan, entitled "Right of Subrogation and Authorization of Reimbursement." (Compl. Ex. A.)

The Plaintiffs paid $5,642.93 in medical expenses on behalf of Bilal for the head injury he sustained in the work-related accident on November 21, 2003. Bilal also received $7,150 for short-term disability benefits. (Compl. ¶9.) According to the Plaintiffs, Bilal owes fringe benefit contributions to the Welfare Fund and Pension Fund in the respective amounts of $8,448 and $8,496 to cover his continued eligibility for benefits in those Funds for the period when he was not working due to his work-related accident on November 21, 2003. (Compl. ¶10.)

On April 21, 2008, the Illinois Workers' Compensation Commission approved a settlement in Case Nos. 04 WC 03220 and 04 WC 05155. The total amount of $117,000 was obtained on behalf of Bilal from DHL and its workers' compensation insurer, Specialty Risk Services. (Compl. ¶11.) The Plaintiffs submitted a copy of the Settlement Contract Lump Sum Petition and Order along with their complaint. (Compl. Ex. D.)

Despite numerous demands made upon the Defendant by counsel for the Plaintiffs, Bilal has failed and refused to reimburse the Plaintiffs for the payments made on his behalf as described above. (Compl. ¶13.)[1] The Plaintiffs claim that Bilal's refusal to reimburse the Plaintiffs violates the plan's provisions and the terms of the Reimbursement and Subrogation Agreement, and that it unjustly enriches Bilal. (Compl. ¶14.)

---

[1] The 13th and 14th numbered paragraphs of the Complaint are mislabeled as paragraphs 10 and 11; the court refers to these paragraphs, which both appear on page 4 of the Complaint, as paragraphs 13 and 14.

## II. Legal Standard

On a motion to dismiss, the court accepts as true all well-pleaded allegations in the plaintiff's complaint, drawing all possible inferences in the plaintiff's favor. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). Dismissal is appropriate only if, after accepting as true all facts in the complaint, the plaintiff cannot plausibly succeed. *Id.* at 1086. Where, as here, the plaintiff submits along with its complaint copies of contracts and other documents referenced therein, the court also may consider those documents. *Centers v. Centennial Mortg., Inc.*, 398 F.3d 930, 933 (7th Cir. 2005). If the unambiguous terms of an attached contract conflict with the plaintiff's allegations, the contract controls. *INEOS Polymers Inc. v. BASF Aktiengesellsch*, 553 F.3d 491, 498 (7th Cir. 2009); *Centers*, 398 F.3d at 933.

## III. Analysis

Bilal moves for dismissal on the grounds that he has not received any payments that are subject to the Subrogation Agreement. (MTD ¶9.)

Bilal filed a complaint in this court against DHL on August 10, 2006, seeking relief for employment discrimination, retaliation, and a head injury that occurred in January 2003, which caused his diminished vision. (MTD ¶4; *see Bilal v. DHL Airborne Express*, No. 06 CV 4328 (Leinenweber, J.)). On May 6, 2008, Bilal and DHL filed a stipulation of dismissal, reaching a confidential settlement of that case. (MTD ¶¶5-6.) Bilal contends that Plaintiffs are seeking a piece of this settlement, which he further contends is not subject to the Subrogation Agreement. (MTD ¶¶9, 10.)

In the same breath, however, Bilal acknowledges that the Plaintiffs' claim relates to a different head injury, which he sustained at work on November 21, 2003. (MTD ¶9.) He also acknowledges that the arbitrator's May 11, 2004 decision concluded that he had suffered a work-

related head injury on that date. (MTD ¶2.) Bilal says he appealed the arbitrator's finding that his optic nerve atrophy was not caused by a work-related accident on that date, but his petition for review was denied on October 11, 2005. (MTD ¶¶2-3.) On April 21, 2008, the Illinois Workers' Compensation Commission approved a settlement in Case Nos. 04 WC 03220 and 04 WC 05155; Bilal received $117,000 from DHL and its insurer to settle his claims of work-related head and eye injuries during the period of January 8, 2003 through November 21, 2003. (Compl. ¶11; Compl. Ex. D at 2.) Pursuant to the Subrogation Agreement, Plaintiffs seek reimbursement from Bilal's proceeds from *this* settlement, not from the settlement of the 2006 complaint that he filed in this court. (Compl. ¶11.) In effect, Bilal contends–erroneously–that Plaintiffs have pled themsevles out of court.

§ 502(a)(3) of ERISA provides that a fiduciary may bring a civil action "(A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (I) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan." 29 U.S.C. § 1132(a)(3). Plaintiffs allege that they are fiduciaries under ERISA and that they seek to enforce the terms of the Subrogation Agreement. (Compl. ¶¶2,5.) They seek restitution and creation of a constructive trust for the portion of Bilal's settlement funds (from Case Nos. 04 WC 03220 and 04 WC 05155) that he owes under the Subrogation Agreement. (Compl. ¶¶10-11.) This remedy is "equitable" within the meaning of § 502(a)(3). *See Sereboff v. Mid Atlantic Med. Servs., Inc.*, 547 U.S. 356 (2006) (constructive trust imposed on particular funds in defendant's possession, such as judgment from tort suit, is "equitable relief" and thus actionable under ERISA). Plaintiffs have therefore stated a plausible cause of action under § 502(a)(3) of ERISA.

Plaintiffs have also asserted a right to reimbursement under state contract law and the terms of the Subrogation Agreement. *See Eddy v. Sybert*, 738 N.E.2d 106, 110 (Ill. App. Ct. 2003) ("Where [a] right is created by an enforceable subrogation clause in the contract, contract terms, not the common law or equitable principles, apply.") Plaintiffs point to the following language in the Subrogation Agreement:

> In consideration of the Fund payment benefits before there has been a final decision on the issue of third party or employer liability, I hereby agree that any and all monies due from any party (including an insurance company), by reason of any claim, demand, suit or settlement (including worker's compensation) arising out of my injuries or illness shall be subrogated to the Fund for all payments, including weekly sick/accident, which it made, and further that out of any and all monies received from any party (including worker's compensation) arising out of my injuries or illness, I shall first reimburse the Fund for all payments, including weekly sick/accident, which it made.

(Compl. Ex. C.) Plaintiffs also point to similar language in Section 2.17 of the Plan. (Compl. Ex. A.) Thus, Plaintiffs have pled a cause of action that plausibly entitles them to relief under contract law and the terms of the Subrogation Agreement.

In his reply, Bilal adds a number of new arguments, which the court need not consider. He presents no proper grounds for dismissing Plaintiffs' complaint.

## IV. CONCLUSION

Accordingly, Defendant's motion to dismiss the complaint is DENIED.

Enter:

/s/ David H. Coar

David H. Coar

United States District Judge

Dated: **September 22, 2009**