# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| LOCAL 705 INTERNATIONAL<br>BROTHERHOOD OF TEAMSTERS HEALTH<br>AND WELFARE FUND and JOSEPH BAKES,<br>STEPHEN F.G. BRIDGE, JUAN CAMPOS,<br>GREGORY R. FOSTER, WILLIAM KEENAN,<br>JOHN NAUGHTON, and STEPHEN E.<br>POCZTOWSKI, as trustees, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |
| | ) | No. 08 C 5027 |
| Plaintiffs, | )<br>) | HONORABLE DAVID H. COAR |
| v. | )<br>)<br>) | |
| RAFEEQ H. BILAL, | )<br>) | |
| Defendant. | )<br>) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Local 705 International Brotherhood of Teamsters Health and Welfare Fund and its trustees ("the Welfare Fund"), filed a complaint arising under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.*, against Defendant Rafeeq Bilal, alleging that he has failed to reimburse the Welfare Fund for medical payments made on his behalf, in violation of Bilal's benefit plan and the parties' reimbursement and subrogation agreement. Before the court is the Welfare Fund's motion for summary judgment. For the following reasons, the motion is GRANTED.

## FACTS

The Welfare Fund provides health and welfare benefits to its members according to the terms set out by the Local 705 International Brotherhood of Teamsters Health and Welfare Fund Plan ("the Welfare Plan"). The Welfare Plan was established under a collective-bargaining agreement between the Local 705 International Brotherhood of Teamsters and signatory

1

employers, and its terms are governed by ERISA. At all relevant times, Bilal was a "participant" in the Welfare Plan, within the meaning of ERISA, and was eligible for benefits.

The Welfare Plan provides, *inter alia*, the following benefits: (1) a weekly disability benefit payment, for up to 26 weeks, to participants who suffer "non-occupational illness or injury" lasting five or more consecutive business days (Plan, Art. XI); (2) medical benefits to eligible participants whose injuries or illnesses are the basis for a claim under the Plan (Plan, Art. II, § 2.15); (3) subject to the Welfare Fund's rights of subrogation, medical and hospital expenses for which a third party is liable in whole or in part. (Plan, Art. II, § 2.17.) Specifically:

> In the event that benefits are paid by the fund to or on behalf of an Eligible Individual for Covered Expenses incurred by the Eligible Individual for Hospital and medical services and supplies provided as a result of or in connection with an Injury, Sickness, accident or condition and such Eligible Individual recovers or is entitled to recover from another source all or a part of such incurred expenses, the Eligible Individual's right to recovery of all or a part of such incurred expenses from another source shall become the Fund's and the Fund shall be entitled to reimbursement of such payments in full, but not more than the amount actually recovered from such other source.

(Plan, Art. II, § 2.17.)

On November 21, 2003, Bilal was employed at DHL Airborne Express, a signatory employer to the Welfare Plan, where he sustained a head injury as the result of an accident. On January 22, 2004, Bilal filed an application for adjustment of claim with the Illinois Industrial Commission (n/k/a Illinois Workers' Compensation Commission), claiming head and eye injuries as result of that accident. (Case No. 04 WC 3220.) On January 31, 2004, Bilal executed a reimbursement and subrogation agreement with the Welfare Fund. The agreement refers to Bilal's November 2003 injury as a "head injury" and states that the Welfare Fund does not provide benefits for injuries that arise outside the course of a participant's employment. It further states that the Welfare Fund will cover the expenses arising from Bilal's work related injuries in exchange for Bilal's promise to reimburse the Fund from any third-party recovery he

receives:

> In consideration of the Fund paying benefits before there has been a final decision on the issue of third-party or employer liability, I hereby agree that any and all monies due from any party (including an insurance company), by reason of any claim, demand, suit, or settlement (including worker's compensation) arising out of my injuries or illness shall be subrogated to the Fund for all payments, including weekly sick/accident, which it made, and further that out of any and all monies received from any party (including workers' compensation) arising out of my injuries or illness, I shall first reimburse the Fund for all payments, including weekly sick/accident, which it made.

On May 7, 2004, an arbitrator issued a decision in Bilal's workers'-compensation claim. He found that Bilal sustained a head injury as a result of the November 2003 accident but that Bilal's other claimed injury—an eye injury resulting in optic nerve atrophy and vision loss—could not have been the result of that accident. Bilal received temporary total disability benefits of $601.33 per week for 8-2/7 weeks, from November 22, 2003 through and including January 19, 2003; and $1052.50 for medical services. On four occasions between March 2004 and April 2005, counsel for the Welfare Fund wrote to Bilal's attorney to inquire as to the status of Bilal's workers' compensation claim. Neither Bilal nor his attorney ever responded.

On April 18, 2008, Bilal settled two workers' compensation claims with DHL, arising from his November 2003 injury and another injury sustained on January 8, 2003. (Case Nos. 04 WC 3220 and 04 WC 5155.) The Illinois Workers' Compensation Commission approved the settlement on April 21, 2008. The settlement contract provides, as relevant here:

> The Respondent [DHL] offers as a compromise of disputed issues and the Petitioner [Bilal] agrees to accept the sum of $117,000.00 as full, final, and complete settlement of any and all claims for compensation, medical, surgical, and hospital expenses due or to become due as a result of accidents occurring 1/8/03 and 11/21/03 and any and all known or unknown re-injuries and subsequent aggravations to date hereof which allegedly resulted from or began with said accidents.

Counsel for the Welfare Fund has made several attempts to contact Bilal's attorney to discuss reimbursement, but neither Bilal nor his attorney has responded, and Bilal has still not

reimbursed the Welfare Fund for any medical, short-term disability, or pension benefits that he received as a result of his November 2003 accident at DHL.

Bilal does not dispute that the Welfare Fund paid him $7,150 in short-term disability benefits. The Fund submits that it also paid out $5,642.93 in medical benefits, and contributed $16,944 to the Welfare and Pension Funds to ensure Bilal's continued eligibility for benefits while he was on disability leave. During discovery, the Welfare Fund served Bilal with requests to admit these facts (Plaintiffs' Requests to Admit, Nos. 5-7) but he failed to respond. At his deposition, Bilal denied that the Welfare Fund paid him any medical benefits or made any contributions on his behalf to the Welfare and Pension Funds.

Bilal also sued DHL in this court. He filed a complaint on August 10, 2006, seeking relief for employment discrimination, retaliation, and head and eye injuries caused by his January 8, 2003 accident. *See Bilal v. DHL Airborne Express*, No. 06 CV 4328 (Leinenweber, J.). The parties reached a confidential settlement agreement and dismissed the case on May 6, 2008. There is no dispute that this settlement is not governed by the reimbursement and subrogation agreement between Bilal and the Welfare Fund.

## LEGAL STANDARD

Summary judgment should be granted "if the pleadings, the discovery, and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). On a motion for summary judgment, the court "must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party." *Allen v. Cedar Real Estate Group, LLP*, 236 F.3d 374, 380 (7th Cir. 2001).

The nonmoving party, in turn, may not rest on the allegations in his pleadings or

conclusory statements in affidavits; he must support his contentions with evidence that would be admissible at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *see Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001); Fed. R. Civ. P. 56(c). To avoid summary judgment, the nonmovant must do more than raise a "metaphysical doubt" as to the material facts. *See Wolf v. Northwest Ind. Symphony Soc'y*, 250 F.3d 1136, 1141 (7th Cir. 2001) (citation and quotation omitted). And "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

## ANALYSIS

The Welfare Fund asks the court to impose a constructive trust in the amount of $29,736.93 on the funds Bilal received in settlement of Case Nos. 04 WC 3220 and 04 WC 5155. Under § 502(a)(3) of ERISA, it is appropriate to impose a constructive trust on settlement funds to enforce the terms of a plan's subrogation provision. *See Sereboff v. Mid Atlantic Med. Servs., Inc.*, 547 U.S. 356, 364-66 (2006) (constructive trust imposed on particular funds in defendant's possession, such as judgment from tort suit, is equitable relief and thus actionable under ERISA). Here, Bilal does not dispute (1) that the reimbursement and subrogation agreement requires him to reimburse the Welfare Fund, from any third-party settlement he receives, for any benefits paid as a result of his November 21, 2003 accident; or (2) that his $117,000 workers'-compensation settlement arises from that very injury. Bilal attempts to fend off the inevitable conclusion that he must reimburse the Welfare Fund with the observation that neither the November 2003 accident nor the reimbursement and subrogation agreement have anything to do with "the settlement of his unrelated Title VII case." That is true but irrelevant. The fact that Bilal received a second, unrelated, settlement from DHL obviously does not exempt his workers'-compensation settlement from a valid subrogation agreement. The Welfare Fund is therefore

entitled to the imposition of a constructive trust on Bilal's workers'-compensation settlement in the amount of the benefits it paid to him or on his behalf as a result of the November 2003 accident.

According to the Welfare Fund, Bilal's benefits totaled $29,736.93: $7,150 in short-term disability benefits; $5,642.93 in medical benefits; and $16,944 in contributions to the Welfare and Pension Funds to ensure Bilal's continued eligibility for benefits while he was on disability leave. Bilal, however, contends that the Welfare Fund only paid short-term disability benefits, so the total amount he owes—if anything—can be no more than $7,150. As evidence, Bilal points to his deposition testimony, where he purported to dispute that the Welfare Fund paid him any medical benefits or made any further contributions on his behalf.

This he may not do. "A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." Fed. R. Civ. P. 36(a)(3). Bilal does not dispute that he failed to respond to the Welfare Fund's requests to admit, including their requests to admit that he received benefits in the amounts the Fund has alleged. True, Bilal later attempted to dispute the Fund's calculation of his benefits at his deposition, but "[t]he use of an alternative form of discovery does not eliminate the requirement that a request for admissions be answered within 30 days. . . . [A defendant's] participation in depositions does not excuse his failure to respond to the request for admissions." *United States v. Kasuboski*, 834 F.2d 1345, 1349 (7th Cir. 1987). Pursuant to Rule 36(a)(3), then, the Welfare Fund's calculation of Bilal's benefits is deemed admitted. Bilal therefore owes the Welfare Fund $29,736.93, and the court imposes a constructive trust in that amount on the funds Bilal received in settlement of his workers'-compensation claims against DHL. The Welfare Fund's request for fees and costs,

however, is denied; each side shall bear its own fees and costs.

## CONCLUSION

For the foregoing reasons, the Welfare Fund's motion for summary judgment is GRANTED. The court imposes a constructive trust in the amount of $29,736.93 on the funds Bilal received in settlement of his workers'-compensation claims. Each side shall bear its own fees and costs.


Enter:

/s/ David H. Coar

_____

David H. Coar

United States District Judge

**Dated: May 18, 2010**